# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 97 C 7773 | **DATE** | 8/17/2000 |
| **CASE TITLE** | Harold D. Vann Nelson vs. The City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Before the court is Defendant's motion for summary judgment [doc. no. 42]. For the reasons set forth in the attached order Defendant's motion is granted.

*Charles R. Norgle, Sr.*

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| X | Docketing to mail notices. |
| X | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials

number of notices

AUG 21 2000
date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

ED-7
FILED FOR DOCKETING
00 AUG 18 PM 3: 39

Date/time received in central Clerk's Office

Document Number

75

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HAROLD D. VANN NELSON,           )
                                 )
            Plaintiff,           )
                                 )
    vs.                          )      Case No. 97 C 7773
                                 )      HONORABLE CHARLES R. NORGLE
                                 )
THE CITY OF CHICAGO,             )      **DOCKETED**
                                 )
            Defendant.           )      AUG 2 1 2000
                                 )

**OPINION and ORDER**

CHARLES R. NORGLE, Sr., District Judge:

Before the court is Defendant's motion for summary judgment. For the following reasons, the motion is granted.

## I.  BACKGROUND[1]

Plaintiff is an African-American male that worked for Defendant, the City of Chicago, in the Mayor's Office of Inquiry and Information and the Department of Sewers from June 1984 until July 2, 1996. Plaintiff's long history with the City includes many instances of progressive discipline leading up to his 1996 discharge from the City's Sewer Department.

The Sewer Department's procedure for disciplining employees is set forth in Defendant's collective bargaining agreement with AFSCME Local Union No. 2946. The policy provides:

> The Employer within his discretion may determine whether disciplinary action should be an oral warning, written reprimand, suspension or discharge, depending upon

---

[1] The court takes the facts from the parties' Local Rule 12 statements, and the parties' briefs. On September 1, 1999, Local Rules 12(m) and 12(n) were renumbered to Local Rule 56.1(a) and 56.1(b). Consistent with the parties' submissions, the court cites the former numbering system in this opinion.

various factors, such as, but not limited to, the severity of the offense or the employee's prior record.

(See Pl.'s 56.1(B)(3) Stat. Ex. F, Ex. 11, Article 20(b).) The policy also:

> [R]equires that a suspension be preceded by a pre-disciplinary meeting. The employee and his/her union representative are entitled to be present and be heard at such a meeting. Following that meeting, a formal notice of suspension may be issued. If such a notice is issued, it is signed by that employee's direct supervisor, or another party directly aggrieved by the employee's conduct. The employee has the option of signing or not signing the Notice.

(See Def.'s 12(M) Stat. ¶ 32) In the event of termination, the Sewer Department's procedure is as follows:

> [T]ermination of an employee is preceded by a pre-disciplinary meeting, issuance of a formal statement of charges and explanation of evidence, and an opportunity for the employee to respond in writing to the statement of charges. If the Commissioner decides to terminate the employee, the employee (if career service) may appeal that decision to the Personnel Board of the City of Chicago (hereafter "the Board"). The employee may then receive a hearing before the Board. The employee and his union representative and/or personal attorney are provided the opportunity to attend the hearing, during which evidence may be presented and witnesses may be heard and/or cross-examined. An employee has the right to a timely appeal of any ruling of the Board.

(See Def.'s 12(M) Stat. ¶ 35.)

Because there are several persons involved, the court provides a background on participants, and then discusses the events that led to this suit. In September 1993, Khalid Ahmed ("Ahmed") became Plaintiff's direct supervisor in the Sewer Department and continued in that capacity until August 1995. Ahmed's responsibilities included evaluating data entry operators' work. In September 1995, Mary Jones ("Jones") began supervising the data entry operators in the Sewer Department, including Plaintiff.

2

John Zander ("Zander"), an administrative services officer, acts as the liaison for personnel issues arising out of the operations section of the Sewer Department including all discipline related matters. Zander never supervised Plaintiff, but he did participate in numerous pre-disciplinary meetings that were held to address accusations of Plaintiff's misconduct, insubordination, harassment, and poor work performance.

Deputy Commissioner Joseph Gagliano ("Gagliano") is responsible for the maintenance of the City's sewer systems and for the overall management of the Sewer Department's inventory and support functions, including safety and data entry. Gagliano never directly supervised Plaintiff. While Gagliano reviewed work performance evaluations prepared by each data entry operator's direct supervisors, including Plaintiff's, he never had authority to influence or change any of the evaluations. Gagliano claims that he refers all disciplinary matters (other than those directly involving him as a party or witness) to Zander. Gagliano lacks authority to suspend or terminate any Sewer Department employee, but he does have authority to recommend a suspension or termination to Teresita Sagun Commissioner at the Sewer Department.

Plaintiff's problems began in 1994, while under the direct supervision of Ahmed. Between January and June 1994, Plaintiff arrived late for work fifteen times. Plaintiff claims that his tardiness was excused because he provided Chicago Transit Authority ("CTA") late passes indicating that the CTA experienced delays. Plaintiff also claims that Ahmed accepted these passes as an excuse. Ahmed admits he accepted the passes for a few days, but when Plaintiff repeatedly arrived late for work, Ahmed informed Plaintiff that the CTA was not an excuse.

On March 3, 1994 Plaintiff had an encounter with Gagliano. Gagliano's and Plaintiff's version of the encounter differ. Gagliano, a white male, claims that Plaintiff called him a "prejudiced mother

fucker" and accused him of engaging in sexual relations with female African-American employees of the Sewer Department. Plaintiff denies he made these statements, and claims that Gagliano said to him that "the problem with you blacks is that you don't want to work." Plaintiff does admit that he commented to Gagliano that Gagliano and the Department of Sewers were prejudiced. Gagliano recommended to the Personnel Director that Plaintiff be suspended for his actions. The next day, Plaintiff attended a pre-disciplinary meeting to address Gagliano's accusations. Also in attendance were Plaintiff's union president, union steward, Gagliano, and Zander. Subsequently, Zander issued Plaintiff a one-day suspension for insubordination and verbal abuse, both violations of Defendant's personnel rules. On March 8, 1994, Gagliano signed the notice of suspension issued to Plaintiff. The following day Plaintiff filed a charge of discrimination with the Illinois Department Human Rights Commission and the Equal Employment Opportunity Commission, charging that his one-day suspension was racially discriminatory based on Gagliano's alleged statement to Plaintiff. Gagliano became aware of this charge in May or June of 1994, two or three months after Plaintiff filed it.

In May 1994, Jones, at the time an Administrative Assistant II who worked for Gagliano, filed a sexual harassment charge against Plaintiff with the City's Sexual Harassment Office, and informed Gagliano and her supervisor, John Marovich, of her charge. The Sexual Harassment Office investigated Jones' charge against Plaintiff, and on December 14, 1994, issued findings that Plaintiff sexually harassed Jones. The Sexual Harassment Office recommended that Defendant suspend Plaintiff for fifteen days.

On June 15, 1994, four of Plaintiff's co-workers, Ethel Griffen, Fred Curtis, Valerie Celestine and Irma Richardson, complained by letter to Gagliano about Plaintiff's work habits. They complained he was not doing his share of work and was taking two lunches. Subsequently, Ahmed

submitted daily output reports to Gagliano that reflected that Plaintiff was among the three least productive operators. In the weeks following Plaintiff's co-worker's complaint, Ahmed frequently complained to Zander that Plaintiff performed his work deficiently and inefficiently, had a poor attitude, and was excessively tardy. On June 23, 1994, Plaintiff attended a pre-disciplinary meeting to discuss his excessive tardiness and falsification of sign-in times. Plaintiff denied that he deliberately falsified his time sheets. Rather, Plaintiff claimed he believed he could sign-in on time if he had a CTA delay voucher. On June 30, 1994 Ahmed suspended Plaintiff for three days effective July 12, 1994, for excessive tardiness, falsifying attendance records, and inefficient work performance. On July 14, 1994, Plaintiff filed an amendment to his previously filed charge of discrimination, claiming that his suspension was retaliation for filing a charge of discrimination.

On August 5, 1994, Ahmed performed Plaintiff's six-month review. Ahmed rated him a 2.1 out of 5 points, indicating that Plaintiff required improvement.[2] At the time Ahmed performed this evaluation, he was not aware that Plaintiff filed a racial discrimination charge against Defendant in March. Additionally, Ahmed's daily progress reports for July and August reveal that Plaintiff failed to input proper codes when closing out complaints.

About a month later, on September 7, 1994, Ahmed informed Zander of additional complaints about Plaintiff's work. A pre-disciplinary meeting followed, and on September 9, 1994, Ahmed issued Plaintiff a seven-day suspension for insubordination, including failure to carry out a directive related to the performance of his duties, failure to complete or close out jobs, and inefficient work performance. On September 15, 1994, Plaintiff filed a second amendment to his charge of

---

[2] The City's Rating scale system provides the following ratings: 4.6 to 5.0 = outstanding; 3.6 to 4.0 = very good; 2.6 to 3.0 = good; 1.6 to 2.0 = requires improvement; and 1.0 to 1.5 = unsatisfactory.

discrimination, claiming that this suspension was further retaliation for filing his charge of discrimination. Plaintiff also claimed that a co-worker who received the same set of accusations but did not file a charge of discrimination was not suspended, but did not identify this co-worker's race.

On September 20, 1994, Ahmed issued a written memorandum to Plaintiff describing Plaintiff's failure to follow proper work procedures, admonishing him for specific inefficiencies in his work performance, and advising that continued poor performance would result in strict disciplinary action.

Plaintiff arrived late for work everyday from October 24 through the 28, 1994. Ahmed claims Plaintiff threatened him on October 28, 1994, when Plaintiff said "[y]ou can do whatever you want. I will see you and I am not bluffing." Plaintiff denies he threatened anyone in the Sewer Department. Subsequently, Ahmed complained to Zander about Plaintiff's continued insubordination and poor work performance. Another pre-disciplinary meeting was held on November 4, 1994, and Ahmed issued a ten-day suspension to Plaintiff for insubordination, failure to carry out directives related to duties, failure to complete or close out jobs, and inefficiency in job performance. On November 16, 1994, Plaintiff filed a third amendment to his charge of discrimination, claiming that his suspension was retaliation for filing his discrimination charge. Plaintiff again claimed that a co-worker who received the same set of accusations but did not file a charge of discrimination was not suspended, and again failed to identify his co-worker's race.

Ahmed claims that Plaintiff threatened him on two occasions in December 1994, when Plaintiff stated that: (1) his file was thicker than Ahmed's, that he was taking notes of what was going on in the department, and that when his turn comes he will see Ahmed; and (2) Ahmed could be out on the street next. Plaintiff denies that he made threatening comments to anyone.

Subsequently, Plaintiff violated additional personnel rules by submitting work on January 20, 1995, indicating it was completed when it was not, and leaving his work site on January 27, 1995, without proper authorization and/or failing to return to work on time after a break.

In February 1995, Ahmed again reviewed Plaintiff's work performance for the previous six month period and gave him a rating of 1.9. Such a score indicates that Plaintiff requires improvement. See supra note 2. Subsequently, Ahmed complained to Zander of Plaintiff's continued poor work performance.

On April 13, 1995, Plaintiff attended another pre-disciplinary meeting. One of the charges against him involved allegations of sexual harassment and verbal abuse of female employees. The meeting was not completed that day but continued to April 19, 1995. However, the meeting did not continue on April 19, because Plaintiff injured himself and could not attend. Due to his injury Plaintiff did not return to work, with the exception of one and one-half hours on May 10th, until July 11, 1995. While at work for that brief time on May 10th, Ahmed requested that Plaintiff update his address form. Plaintiff refused.

On July 13, 1995, the April 13, pre-disciplinary meeting was re-convened. On July 31, 1995, Ahmed issued a twenty-nine day suspension to Plaintiff for: (1) sexually harassing one or more female employees; (2) creating a hostile work environment; (3) poor work performance; and (4) leaving his worksite without proper authorization and/or failure to return to his worksite after a break. This twenty-nine day suspension included fifteen days for sexual harassment of Jones that the Sexual Harassment Office recommended on December 14, 1994. Subsequently, Plaintiff filed a sixth amendment to his charge of discrimination, claiming that the twenty-nine day suspension was another example of retaliation against him for filing his charge of discrimination.

In October of 1995, Irma Richardson ("Richardson"), an African-American data entry operator, and co-worker of Plaintiff's, reported to Zander and Gagliano that Plaintiff was sexually harassing and threatening her. She reported that Plaintiff said: "I'm going after the people who filed charges on me. I'm going to make them miserable. They're going to wish they didn't know me." (See Def. 12(M) Stat. at ¶ 105.) Zander noted that during her report, Richardson became upset, cried, and experienced an elevation in her blood pressure. Plaintiff denies that he made any threatening comments to Richardson, but does not deny that he made sexually harassing comments.

A few days after Richardson reported Plaintiff's harassing and threatening behavior, Plaintiff entered Zander's office while he was meeting with another employee and loudly complained about Jones. Zander then observed Plaintiff engage in a verbal altercation with Jones. On November 1, 1995, Zander observed Plaintiff sign out thirteen minutes prior to the end of his shift.

On November 16, 1995, Defendant placed Plaintiff on paid administrative leave pending a formal investigation into the allegations of absenteeism, falsification of time-attendance records, discourteous treatment of co-workers and/or supervisors, insubordination, incompetent/inefficient work performance, unauthorized use of city property, sexual harassment, and retaliation against department members who reported Plaintiff's conduct to the Sexual Harassment Office. That same day, Plaintiff's supervisor, Jones, found stacks of reports in Plaintiff's desk that were either entered into the system erroneously, or not entered at all.

Teresita Sagun ("Sagun"), Commissioner of the Sewer Department, terminated Plaintiff on July 2, 1996, for the following actions, all of which occurred after July 31, 1995: (1) failure to return to work on time after a break; (2) providing false information on his time sheet; (3) incompetent or inefficient work performance; (4) failure to follow direction of supervisor and complete work; (5)

refusing to provide change of address information as requested by supervisor; (6) sexually harassing or verbally abusing female employees; and (7) making threatening statements to City employees. After his termination, Plaintiff requested a hearing before the Personnel Board. On October 10, 1996, the Board conducted a hearing in his absence, and upheld Plaintiff's termination.

Plaintiff received a right to sue letter dated August 7, 1997, and filed a pro se complaint of discrimination on November 5, 1997, alleging that Defendant discriminated against him by creating a hostile work environment, by terminating him based on his age and race, and by retaliating against him for opposing discrimination. Defendant filed a motion to dismiss, which the court granted in part and denied in part. (See Order of May 27, 1998.) The court dismissed: (1) Plaintiff's age and color discrimination claims; (2) any claims brought pursuant to 42 U.S.C. § 1981; and (3) Commissioner Sagun and the Department of Sewers as defendants. (See id.) The court denied Defendant's motion to dismiss Plaintiff's race discrimination and retaliation claims. (See id.) On July 10, 1998, Defendant filed a motion to clarify the court's May 27, 1998 order and sought dismissal of Plaintiff's claims that his termination was retaliatory and his prayer for punitive damages. The court denied Defendant's motion to dismiss the retaliatory discharge claim, but granted the dismissal of Plaintiff's punitive damages claim. (See Order of July 31, 1998)

## II.  DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir.1993), that raise more than

a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Educ. Servs. Inc., 176 F .3d 934, 936 (7th Cir.1999). Put another way, summary judgment is the stage of a lawsuit where a party must present evidence that could convince a trier of fact to accept his version of events. See Shank v. William R. Hague, Inc., 192 F.3d 675, 682 (7th Cir.1999). In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir.1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c), see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), see also First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir.1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). With these principles in mind, the court examines Defendant's motion.

## B. Discrimination Claims

Plaintiff claims that Defendant: (1) subjected him to a hostile work environment; (2) terminated him based on his race; and (3) retaliated against him for filing a charge of discrimination. Plaintiff bears the ultimate burden of showing that Defendant discriminated against him because of his race and in retaliation for a protected activity. See Johnson v. West, --- F.3d ---, No. 98-3903, 2000 WL 876929, at *6 (7th Cir. July 5, 2000).

## 1. Hostile Work Environment

Initially, the court points out that Plaintiff apparently abandons his hostile work environment claim. To establish a hostile work environment claim, a plaintiff must show that his work environment is so pervaded by racial harassment that the terms and conditions of his employment are altered. See Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1143-44 (7th Cir. 1997) (citing cases). "The workplace that is actionable is the one that is 'hellish.'" Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir.1997). Allegations of isolated or stray epithets do not constitute an actionable hostile workplace claim. See Brill v. Lante Corp., 119 F.3d 1266, 1274 (7th Cir.1997); see also North v. Madison Area Ass'n for Retarded Citizens-Development Ctrs. Corp., 844 F.2d 401, 409 (7th Cir.1988) (exposure to one or two isolated epithets not sufficient to constitute hostile work environment). "'Whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.'" Gleason, 118 F.3d at 1143-44 (quoting Harris v. Forlift Systems, Inc., 510 U.S. 17 (1993)); Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986) ("[c]asual comments, or accidental or sporadic conversation," cannot sustain a claim of racial harassment); but see Hunt v. City of Markham, Ill., --- F.3d ---, No. 99-1331, 2000 WL 968540, at *2 (7th Cir. July 11, 2000) (stating that a stray remark made by decision maker, or someone that provides input into the adverse employment action, around the time of the action complained of may raise an inference that the decision maker was influenced by improper motives). Here, Plaintiff points to a single offensive comment, Gagliano's statement that "the problem with you blacks is that you don't want to work." Such an isolated incident cannot support his claim that he was subjected to a hostile work environment. Moreover, Plaintiff provides no argument or legal citation to support or develop this point. As such, Plaintiff has waived his hostile work environment claim. See Spath v. Hayes Wheels

11

Int'l Ind., Inc., 211 F.3d 392, 397 (7th Cir. 2000) (argument deemed waived if party fails to develop factual basis of claim); Gagan, 77 F.3d at 965 (failure to cite any factual or legal basis for an argument results in its waiver); Hartmann, 9 F.3d at 1212 (holding that a litigant who fails to pursue a point or support his argument with authority abandons the point).

## 2. Discriminatory Discharge

In order to avoid summary judgment, Plaintiff could present either direct evidence of discrimination, such as a "smoking gun" admission, or present indirect evidence under the three-step burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1397 (7th Cir.1997). Under either method, Plaintiff must demonstrate that, but for his race, Defendant would not have terminated him. See Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 n.8 (7th Cir.1997). Plaintiff claims that he has both direct and indirect evidence of discrimination, which the court will address in turn.

### a). Direct Evidence

Turning to Plaintiff's claim that he provides direct evidence of discrimination, the court finds his claim to be without merit. As noted above, direct evidence is "smoking gun" evidence of intentional discrimination. See Wallace, 103 F.3d at 1397. The Seventh Circuit has defined direct evidence as evidence which, "if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." See Bahl v. Royal Indemnity Co., 115 F.3d 1283, 1290 n.6 (7th Cir, 1997) (citing Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir.1997)). In order for an isolated comment to rise to the level of direct evidence of discrimination, it "must be contemporaneous with the discharge or causally related to the discharge decision making process." Geier v. Medtronic, Inc., 99 F.3d 238, 242 (7th Cir. 1996) (citations omitted). An example of direct

12

evidence is a statement from the persons responsible for the adverse employment action that they did so because of impermissible factors. See Robin v. Espo Eng'g. Corp., 200 F.3d 1081, 1088 (7th Cir. 1999) (noting that direct evidence in an age case would be "I fired you because of your age"). Direct evidence must also be temporally related to the adverse employment action. See id. at 1089. Such evidence is extremely rare because employers are understandably cautious about discrimination claims. See id. at 1088; Castleman v. Acme Boot Co., 959 F.2d 1417, 1420 (7th Cir.1992).

Plaintiff's "direct evidence" is limited to Gagliano's single statement made in March of 1994, "the problem with you blacks is that you don't want to work." This evidence does not meet the "smoking gun" standards of direct evidence. First, and most obvious, is that the evidence does not demonstrate that Sagun terminated Plaintiff because of his race. Indeed this evidence does not involve Sagun at all. Further, the evidence is not temporally related to the decision to fire Plaintiff, as required of direct evidence. See Robin, 200 F.3d at 1089 (stating that allegedly discriminatory remark made two years prior to discharge lacked temporal proximity to employment decision). Rather, Gagliano made this statement more than two years prior to Plaintiff's termination. Therefore, the court finds that Plaintiff presents no direct evidence that his termination was the result of illegal discrimination.

b). Indirect Evidence and Pretext

Under McDonnell Douglas, Plaintiff must first establish his prima facie case by demonstrating that: (1) Plaintiff is a member of a protected group; (2) Plaintiff met the City's legitimate work expectations; (3) Defendant terminated Plaintiff's employment; and (4) Defendant treated persons outside of the protected class more favorably. See Robin, 200 F.3d at 1090. Once Plaintiff establishes his prima facie case, a rebuttable presumption is created that the City's decision to

terminate him was based on the "consideration of impermissible factors." See DeLuca v. Winer Indus., 53 F.3d 793, 797 (7th Cir.1995). "[T]he burden of production (not proof) then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action." Sirvidas v. Commonwealth Edison Co., 60 F.3d 375, 377-78 (7th Cir.1995). If the employer provides a legitimate business explanation, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to show that the employer's proffered reasons are a pretext for the alleged discrimination. See id. at 378.

The McDonnell Douglas framework does not require a court to address the prima facie case issue; it may assume that Plaintiff satisfies the requirements for a prima facie case and proceed to the question of whether he succeeds in demonstrating pretext. See Jackson v. E.J. Brach Corp., 176 F.3d 971, 982 (7th Cir.1999) (assuming that plaintiff met burden of establishing prima facie case and deciding the matter on pretext issue); Debs v. Northeastern Ill. Univ., 153 F.3d 390, 395 (7th Cir.1998) (citing United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.")); Jayasinghe v. Bethlehem Steel Corp., 760 F .2d 132, 135 (7th Cir.1985) ("[T]he prima facie threshold is no longer a relevant issue once the defendant has come forward with evidence of legitimate reasons for its actions that would rebut a prima facie showing of discrimination."). The court finds that the case at bar is more appropriately decided on its pretext arguments. Thus, even though Defendant disputes that Plaintiff establishes a prima facie case, the court assumes Plaintiff does so and proceeds to examine the issue of pretext.

Defendant asserts, and the court agrees, that it has articulated a legitimate business reason for terminating Plaintiff. Defendant terminated Plaintiff based on his actions on May 10, 1995 and after July 31, 1995, including: (1) failure to return to work on time after a break; (2) providing false information on his time sheet; (3) incompetent or inefficient work performance; (4) failure to follow directions of supervisors and complete work; (5) refusing to provide change of address information as requested by his supervisor; (6) sexually harassing or verbally abusing female employees; and (7) making threatening statements to City employees. As support for this claim, Defendant points to Ahmed's evaluations and complaints of Plaintiff's work, which indicate that Plaintiff needed improvement, failed to follow directives, and refused to provide his address information. Defendant also provides evidence that Zander saw Plaintiff sign out before the end of his shift on November 1, 1995. Finally, Defendant provides evidence that Richardson reported, in October of 1995, that Plaintiff sexually harassed and threatened her.

Thus, the dispositive issue is whether Plaintiff presents evidence that Defendant's reasons are mere pretext for illegal discrimination. To establish pretext, Plaintiff must demonstrate that Defendant offered a "phony reason for some action." See Paluck v. Gooding Rubber Co., --- F.3d ---, No. 99-3703, 2000 WL 1025580, *7 (7th Cir. July 26, 2000) (quoting Green v. National Steel Corp., 197 F.3d 894, 899 (7th Cir. 1999)). "Pretext means a lie [for the adverse] action." See Plair, 105 F.3d at 348. Furthermore, the evidence used to establish pretext must squarely rebut the proffered legitimate business reason. See id. at 349 (analogizing that an employee discharged for poor attendance does not prove pretext by arguing that no other employee did the job better); see also Hughes v. Brown, 20 F.3d 745, 747 (7th Cir.1994). When "examining pretext, the question is whether the employer honestly believed its proffered reason for discharge." Essex v. United Parcel

15

Serv., Inc., 111 F.3d 1304, 1310 (7th Cir. 1997). To show pretext, Plaintiff may demonstrate that Defendant's proffered reason: (1) is factually baseless; (2) was not the actual motivation for terminating Plaintiff; or (3) was insufficient for termination. See Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 (7th Cir, 1998) (citing Wolf, 77 F.3d at 919). A plaintiff's self-serving statements and the opinion of a co-worker about the about plaintiff's work performance are not relevant to the pretext inquiry. See Gustovich v. AT&T Communications, Inc., 972 F.2d 845, 848 (7th Cir. 1992) ("[E]mployee's self-serving statements about his ability . . . are insufficient to contradict employer's negative assessment of that ability."); Johnson v. City of Fort Wayne, Ind., 91 F.3d 922, 940 (7th Cir. 1996) (finding that co-worker's testimony that plaintiff was qualified was insufficient to cast doubt on defendant's proffered reasons for employment action); Anderson v. Baxter Healthcare, Corp., 13 F.3d 1135, 1125 (7th Cir. 1994) (noting that co-worker's materials indicating an employee's performance was satisfactory was not enough to create a material issue of fact). The court notes that it "does not sit as the super-personnel department that reexamines an entity's business decisions." Dale v. Chicago Tribune Co., 458, 464 (7th Cir. 1986). Instead, the court must determine "whether the employer gave an honest explanation of it's behavior." See Jackson, 176 F.3d at 984 (quoting Pollard v. Rea Magnet Wire Co., 824 F.2d 557, 560 (7th Cir. 1987)). Again, the ultimate burden of persuasion rests with, and never shifts from, the plaintiff at every point in the litigation process. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993).

c). Plaintiff's Evidence of Pretext

Plaintiff argues that he establishes pretext because he disputes the factual basis for each of the charges against him. Plaintiff generally categorizes the charges against him as: (1)

tardiness/absenteeism; (2) poor work performance; (3) insubordination; (4) sexual harassment; and discourteous/threatening behavior. The court will address each category. After reviewing all of Plaintiff's evidence, the court finds that Plaintiff fails to raise a triable issue of pretext.

### 1). Tardiness/Absenteeism

Defendant terminated Plaintiff, in part, for his failure to return to work after a break and falsifying his time sheets after July 31, 1995. Plaintiff's evidence of pretext neglects to address these reasons. Instead, Plaintiff argues that while he arrived late to work occasionally from January through June of 1994, he thought such tardiness was excused as long as he provided a CTA late slip. Because Defendant did not rely on these instances of tardiness to terminate Plaintiff, this argument is irrelevant. As such, Defendant's articulated legitimate reason is unchallenged and Plaintiff fails to raise an issue of fact.

### 2). Poor Work Performance

Next, with respect to Plaintiff's poor work performance, Plaintiff admits he made mistakes, but argues that others who made mistakes were not disciplined. Plaintiff also claims that others were less productive. In support of his position, Plaintiff offers the testimony of a non-supervisory co-worker, who opined that Plaintiff had fewer problems than others closing out files. Plaintiff's argument lacks merit. As previously stated, it is the employer's perception that is relevant in the pretext analysis, not the employee's or that of another co-worker. See Adreani, 154 F.3d at 398. Plaintiff's self-serving statements and the opinion of a co-worker about his adequate work performance fail to raise an issue of material fact with respect to pretext. See Gustovich, 972 F.2d at 848 ("[E]mployee's self-serving statements about his ability . . . are insufficient to contradict employer's negative assessment of that ability."); Johnson, 91 F.3d at 940 (finding that co-worker's

testimony that plaintiff was qualified was insufficient to cast doubt on defendant's proffered reasons for employment action); Anderson, 13 F.3d at 1125 (noting that co-worker's materials indicating an employee's performance was satisfactory was not enough to create a material issue of fact). Even if Defendant mistakenly believed that Plaintiff was one of the least productive data entry operators, Plaintiff would still not prevail. In demonstrating pretext, "a plaintiff must show more than that the employer's decision was incorrect; the plaintiff must also show that the employer lied about its proffered explanation." See Abioye v. Sundstrand Corp., 164 F.3d 364, 368 (7th Cir. 1998). Plaintiff has failed to meet his burden.

      3).   <u>Insubordination</u>

      Defendant's charge of insubordination is based on events that occurred on May 10, 1995 and after July 31, 1995, namely: (1) Ahmed's complaints that Plaintiff refused to follow directions, close out files, and provide an updated address; and (2) Plaintiff's barging into Zander's office while Zander was meeting with another employee. Rather than address these reasons, Plaintiff asserts that he never called Gagliano a "prejudiced mother fucker" or accused him of engaging in sexual relations with African-American women in the Sewer Department. Additionally, Plaintiff claims that his failure to close out files was unintentional, not a deliberate refusal to follow instructions. Plaintiff's mere denials of these instances of insubordination do not raise a genuine issue of material fact to defeat summary judgment. See Adreani, 154 F.3d at 398 (noting that employer's perception of plaintiff's action are relevant to pretext inquiry, not plaintiff's perception). The court notes that Plaintiff's insubordination toward Gagliano was not a basis for Plaintiff's termination in July of 1996. Accordingly, Plaintiff's denial that he made those statements is irrelevant and does not raise an issue of fact that would defeat summary judgment. See Plair, 105 F.3d at 349 (stating that evidence used

to establish pretext must squarely rebut the proffered legitimate business reason for termination). Turning to Plaintiff's denial of insubordination for failing to properly close out files, the court again notes that it is the perception of the employer and not the employee that is relevant in the pretext analysis. See Adreani, 154 F.3d at 398. Thus, Plaintiff's claim that his actions were unintentional is irrelevant and fails to support his argument that Defendant's reason of insubordination was pretext. As such, Plaintiff fails to creates an issue of material fact to defeat summary judgment.

4). <u>Sexual Harassment</u>

Defendant terminated Plaintiff, in part, due to his sexual and verbal harassment of female employees after July 31, 1995. In October of 1995, Richardson reported to Zander that Plaintiff was sexually harassing her. Plaintiff fails to address this articulated reason, but instead argues that he did not make the remarks Jones accused him of one and one-half years earlier in 1994 and that the Sexual Harassment Office ignored witnesses who claimed they did not observe any harassing comments toward Jones. Plaintiff's argument fails. Defendant did not base Plaintiff's termination on the sexual harassment of Jones, rather, that conduct formed the basis for the August 1994 suspension. As such, Plaintiff's denial of sexual harassing Jones is irrelevant. Because Plaintiff fails to address this subsequent incident of sexual harassment against Richardson, the court finds that it is not pretext for discrimination.

5). <u>Threatening Behavior</u>

Defendant contends that Plaintiff made comments of a threatening nature to Ahmed, Zander, and Richardson. However, only the comments Plaintiff made to Richardson after July 31, 1995 support Defendant's articulated reason for termination. Plaintiff's only argument is that he simply denies making any threatening comments to anyone. As explained previously, it is the employer's

perception that is relevant. See Adreani, 154 F.3d 398. Here, the evidence supports a finding that

Defendant believed that Richardson felt threatened by Plaintiff. Richardson reported to Zander that

Plaintiff told her "I'm going after the people who filed charges on me. I'm going to make them

miserable. They're going to wish they didn't know me." Zander observed that Richardson became

upset, cried and experienced an elevation in her blood pressure when she reported Plaintiff's

comments. Plaintiff, on the other hand, fails to offers any evidence that indicates that Zander did not

believe that Richardson felt threatened. As such, Plaintiff fails to raise an issue of fact that raises an

inference that Defendant's stated reason for termination was pretextual.

In sum, Plaintiff fails to present evidence that shows Defendant's stated reasons for

terminating him are pretext for discrimination, thus, Plaintiff cannot survive summary judgment as

to his claim of race discrimination.

### 3. Retaliation[3]

Plaintiff claims that all of his suspensions and terminations were retaliation for his filing a

discrimination charge. In order to establish a Title VII retaliation claim, Plaintiff must establish that:

---

[3] In his statement of facts, Plaintiff presents an initial charge of discrimination followed by seven amendments, all alleging retaliation for the previous charges of discrimination. In his supporting memorandum Plaintiff fails to present any argument with respect to three of the amendments. These are: (1) Plaintiff's fourth amendment to his charge filed on January 9, 1995, claiming that since October of 1994, the City assigned him unequal job assignments; (2)Plaintiff's fifth amendment to his charge of discrimination filed in May 1995, claiming that Defendant retaliated against him when it took him off the duty disability program in May of 1995 and forced to return to work after filing a charge of discrimination; and (3) Plaintiff's seventh amendment filed on January 24, 1996, adding that he believes his health insurance was canceled in further retaliation for having filed a charge of discrimination. Because Plaintiff fails to even mention these charges of discrimination in his memorandum, he has waived any argument with respect to these charges. See Gagan v. American Cablevision, Inc., 77 F.3d 951, 965 (7th Cir. 1996) (failure to cite any factual or legal basis for an argument results in its waiver); Hartmann v. Prudential Ins. Co., 9 F.3d 1207, 1212 (7th Cir. 1993) (holding that a litigant who fails to pursue a point or support his argument with authority abandons the point).

(1) he engaged in statutorily protected activity; (2) he suffered an adverse action by his employer; and (3) a causal link exists between the protected expression and the adverse action. See West, 2000 WL 876929, at *6. As in a race discrimination case, once Plaintiff establishes a prima facie case, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination. See id. Again, although Defendant disputes the existence of a prima facie case, the court assumes Plaintiff establishes a prima facie case and moves on to the pretext analysis. See discussion supra p. 14. The court addresses each of Plaintiff's claims in turn.

### a). March 1994 Suspension

Initially, the court finds that the first suspension on March 8, 1994, is not retaliatory and cannot be merely on the basis of timing. Plaintiff received his March 1994 suspension for verbal abuse of his superior. The next day Plaintiff filed a charge of discrimination alleging that this first suspension was discriminatory. When he filed his charge he did not allege that his suspension was in retaliation for any protected activity, nor can he do so now. Defendant provides a legitimate reason for each subsequent suspension. Thus, the relevant question is whether Plaintiff presents evidence that Defendant's reasons are pretext for discrimination.

### b). July 1994 Suspension

Plaintiff's three-day suspension effective July 12, 1994, signed by Ahmed was based on excessive tardiness, falsifying attendance sheets, and inefficient work performance. As support for this suspension Defendant provides: (1) an affidavit from Ahmed explaining that Plaintiff arrived late for work fifteen times between January and June of 1994; (2) after June 15, 1994, Ahmed complained to Zander about Plaintiff's poor work performance based on daily output reports that indicated

21

Plaintiff was one of the least productive operators; and (3) a letter from Plaintiff's co-workers complaining that he was not doing his fair share nor working a full schedule.

Plaintiff attempts to demonstrate pretext by arguing that: (1) he believed Ahmed excused his tardiness due to CTA delays; (2) Gagliano was responsible for the suspension; and (3) his work was no worse than others.

Drawing all inferences in Plaintiff's favor, a jury could infer that Ahmed excused Plaintiff's tardiness between January and June of 1994, and, thus, suspending Plaintiff for tardiness was pretextual. Standing alone, however, this does not raise a triable question of fact. Recall that Plaintiff's July 1994 suspension was based on falsifying attendance sheets and inefficient work performance in addition to tardiness. The inference that tardiness may be pretextual does not vitiate the other reasons for Plaintiff's suspension. Plaintiff fails to offer any competent evidence to suggest that Defendant did not honestly believe that Plaintiff falsified attendance sheets or that Plaintiff's work performance was inefficient. The most Plaintiff offers is his, and one of his co-worker's, opinions about Plaintiff's work performance, which are immaterial with respect to whether Defendant believed Plaintiff was inefficient. See Adreani, 154 F.3d at 398 (stating that the employer's perception of plaintiff's work performance is relevant to the pretext analysis, not plaintiff's perception of his own performance). Plaintiff's other argument, that Gagliano was behind the July 1994 suspension is nothing more than Plaintiff's speculation, and is not supported by the record. Therefore, Plaintiff cannot demonstrate that, but for his previous filing of a discrimination charge, he would not have been suspended. Thus, Plaintiff fails to raise an issue of fact with respect to his July 1994 suspension. Cf. Bahl, 115 F. 3d at 1290 n.8.

c). September 1994 Suspension

Plaintiff's next suspension occurred in September of 1994, and was based on insubordinate actions, including failure to carry out directives related to the performance of his duties, failure to complete work, and inefficient work performance. In support of these violations Defendant provides Plaintiff's August performance rating showing he needs improvement; (2) Ahmed's observation of Plaintiff's work in July and August and his complaints to Zander regarding Plaintiff's poor performance. In support of his pretext argument, Plaintiff admits he made mistakes, but claims they were unintentional. Plaintiff also claims that he believed his work was no worse than his co-workers. As explained above, it is not Plaintiff's perception of his work or whether he intentionally disregarded directives. Rather, it is the perception of the employer. See Adreani, 154 F.3d at 398. Plaintiff's argument fails to raise a genuine issue of fact with respect to pretext because he fails to show that Defendant did not believe Plaintiff was inefficient and insubordinate. See discussion supra pp. 17-19.

d). November 1994 Suspension

In November 1994, Defendant suspended Plaintiff for ten days for insubordinate actions, including failure to carry out directives related to the performance of his duties, failure to complete work, and inefficient performance of work. In support of this suspension, Defendant presents a September 20, 1994 memorandum authored by Ahmed that documents Plaintiff's failure to follow procedures, admonishes Plaintiff for inefficient work performance and warns that continued poor performance would result in further strict disciplinary action. Plaintiff attempts to demonstrate pretext with the same arguments he made previously - he admits that he made mistakes but claims they were unintentional. As stated above, the relevant inquiry is whether Defendant perceived that Plaintiff performed poorly. See Adreani, 154 F.3d at 398. Defendant provides ample evidence that

it believed Plaintiff was performing poorly. On the other hand, Plaintiff's perception that his mistakes were unintentional fails to raise an issue of fact as to Defendant's stated reason for suspending Plaintiff in November of 1994.

### e). August 1994 Suspension

Plaintiff served a twenty-nine day suspension in August 1995. Defendant based this suspension on: (1) sexually harassing one or more female employees; (2) creating a hostile work environment; (3) poor work performance; and (4) leaving his work site without proper authorization and/or failure to return to his work site after a break. Defendant supports this suspension with: (1) the Sexual Harassment Offices's report finding that Plaintiff sexually harassed Jones; (2) threatening comments Plaintiff made to other employees; (3) Plaintiff's February 1995 performance rating of 1.9, indicating he needed improvement; and (4) Ahmed's affidavit claiming Plaintiff left his work site without authorization. Plaintiff fails to address leaving his work site or failing to return without authorization. As such, it is deemed admitted. See Local Rule 56.1(b)(3)(b); cf. Dade v. Sherwin-Williams Co., 128 F.3d 1135, 1140 (7th Cir. 1997).

Plaintiff focuses on denying the claims of harassment, hostile work environment and poor work performance. In support of his pretext argument Plaintiff claims that the Sexual Harassment Office ignored witnesses who claimed they did not observe him harass Jones, he denies making threatening comments to anyone, and he claims his work was not worse than others. See discussion supra pp. 17-20. As stated previously, it is not Plaintiff's perception, but rather Defendant's, that is relevant to the pretext analysis. See Adreani, 154 F.3d 398. Plaintiff provides no evidence that raises an issue of fact as to whether Defendant truly believed the Sexual Harassment Office's report, rather, he contests how the investigation was conducted. This attack on the report itself is without merit

because even if the report were incorrect, Plaintiff would, at most, demonstrate that Defendant based his suspension on a mistake, not on a discriminatory reason. See Abioye, 164 F.3d 368.

Additionally, the most Plaintiff presents to support his argument that his poor work performance is pretext for retaliation is that he did not intentionally make mistakes and one co-worker believed he was not the worst operator. Plaintiff's intent and his non-supervisory co-worker's opinion are not relevant to determine whether Defendant believed Plaintiff's work performance was poor and a reason to suspend him. See Adreani, 154 F.3d 398. Plaintiff has failed to establish that Defendant's reasons for the twenty-nine-day suspension were pretext for discrimination.[4]

### f). Termination

Finally, the court turns to Plaintiff's termination. As with his discriminatory discharge claim, Plaintiff asserts that Defendant's stated reason for terminating him are pretext. The court's earlier discussion applies here as well. See discussion supra pp.16-20. For the same reasons that Plaintiff fails to raise an issue of fact with respect to pretext for termination based on race, he fails to do so for termination based on retaliation. In other words, Plaintiff fails to raise an inference from which a jury could infer that Plaintiff was not fired for the legitimate reasons Defendant alleges, but in retaliation for filing charges of discrimination.

---

[4] Defendant also argues that Plaintiff cannot establish a prima facie case of discrimination or retaliation with respect to the twenty-nine day suspension because the Doctrine of Collateral Estoppel bars Plaintiff from arguing that he adequately performed his job. However, because the court does not address Plaintiff's prima facie case, but instead, analyzes the pretext argument, the court need not address this argument.

### III.  CONCLUSION

For the reasons stated above, the court grants Defendant's motion for summary judgment.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: _8-17-00_